IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Steve Levine, | ) | C/A No. 0:09-1737-HMH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Steve Levine ("Levine"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On April 27, 2005, Levine applied for SSI and DIB. Levine's applications were denied initially and on reconsideration and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 19, 2008 at which Levine appeared and testified and was represented by Paul T. McChesney, Esquire. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated January 14, 2009 finding that Levine was not disabled because he could perform his past work.

Levine was fifty-two years old at the time of the ALJ's decision. He completed five years of college, but did not earn a degree. He has past relevant work experience as a technical customer service representative, research interviewer, account manager, process server, field enumeration

manager, maintenance worker, and laborer. (Tr. 85, 135-36.) Levine alleges disability since

September 30, 2002 due to essential tremor, major depressive disorder, and generalized anxiety

disorder. (Tr. 84, 134.)

The ALJ made the following findings and conclusions:

1.      The claimant met the insured status requirements of the Social Security Act
        through December 31, 2007.

2.      The claimant has not engaged in substantial gainful activity since September
        30, 2002, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et
        seq.*).

                              *      *      *

3.      The claimant has the following severe impairments: dysthymia, generalized
        anxiety disorder, and dependent personality disorder with schizoid tendencies
        (20 CFR 404.1521 *et seq*. and 416.921 *et seq*.). The claimant drank heavily
        in the past, by his own admission, but denies current use.

                              *      *      *

4.      The claimant does not have an impairment or combination of impairments
        that meets or medically equals one of the listed impairments in 20 CFR Part
        404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and
        416.926).

                              *      *      *

5.      After careful consideration of the entire record, I find that the claimant has
        the residual functional capacity to perform a full range of work at all
        exertional levels but with the following nonexertional limitations: he can
        carry out tasks in situations where duties are relatively static and changes can
        be explained. I also find that he can perform tasks which do not require
        complicated independent prioritization or more than daily planning, and he
        can carry out multi-step tasks, but with reduced stress tolerance.

                              *      *      *

6.      The claimant is capable of performing past relevant work as a tent laborer,
        park maintenance worker, and delivery truck driver (20 CFR 404.1565 and
        416.965).

                              *      *      *

7.      The claimant has not been under a disability, as defined in the Social Security
        Act, from September 30, 2002 through the date of this decision (20 CFR
        404.1520(f) and 416.920(f)).

(Tr. 15-24.)

PJG

On April 24, 2009, the Appeals Council denied Levine's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 5-7.) Levine filed this action on June 29, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner

PJG

must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

PJG

## ISSUES

Levine raises the following issues for this judicial review:

I.       Did the ALJ assess Levine's mental impairments in the manner required by the regulations?

II.     Did the ALJ adequately explain his findings regarding Levine's residual functional capacity, as required by Social Security Ruling 96-8p?

(Pl.'s Br. at 1, Docket Entry 8.)

## DISCUSSION

### A.    Mental Impairments

Levine first argues that the ALJ failed to assess his mental impairments in accordance with the regulations. While Levine concedes that the ALJ performed a function-by-function assessment as required by 20 C.F.R. § 404.1520a(e)(2) and § 416.920a(e)(2), he contends that the ALJ's opinion contains contradictory findings. (Pl.'s Br. at 21, Docket Entry 8.) In support of this contention, Levine presents a multitude of scattered arguments that essentially appear to allege contradictory findings with regard to: (1) two state agency assessments, (2) Levine's degree of social functioning, and (3) Levine's residual functional capacity ("RFC"). The court has carefully reviewed Levine's arguments and the record, and upon close examination of the ALJ's opinion and based on the following, the court finds that the ALJ's opinion does not contain inconsistent or contradictory findings as alleged by the plaintiff.

#### 1.    State Agency Assessments

Levine argues that "the ALJ indicated that in regard to the RFC findings, significant weight was given to the state agency assessment;" but that, despite this statement, the ALJ failed to provide

any reason for reaching less restrictive findings as to Levine's functional limitations[1] than those indicated by the state agency assessments. (Pl.'s Br. at 22, Docket Entry 22.) A close reading of the ALJ's opinion reflects that she did not include a blanket statement indicating that she gave significant weight to the entirety of either state agency assessment. The opinion stated that "I am giving significant weight to the State Agency's *narrative* assessment, specifically found at *Exhibit 11F, page 3*." (Tr. 22) (emphasis added). This page includes a section of a disability determination by Dr. David Demuth, a state agency physician. It contains his functional capacity assessment, including a summary of the medical evidence available at that time and opinions with regard to several categories of functional limitations. (Tr. 343.) The ALJ found that "this analysis is an accurate summation of the evidence in the record." (Tr. 22.) Furthermore, in this case, the ALJ found that Levine had mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. (Tr. 21.) None of these findings contradicts the findings by Dr. Demuth contained on page three of Exhibit 11F. Therefore, this argument is without merit.

To the extent that Levine is arguing that the ALJ erred in failing to provide a specific explanation as to why the more restrictive limitations contained in the other state agency assessment and the remainder of Dr. Demuth's assessment were not accepted, the court finds that this argument does not avail Levine. Considering the ALJ's opinion in its entirety, the court finds that it is very comprehensive and detailed. Each finding made by the ALJ includes her rationale for reaching that

---

[1] The ALJ refers to these as the "paragraph B criteria" of Listings 12.04, 12.06, and 12.08. To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

*PJG*

finding. For example, the ALJ found no evidence of any episodes of decompensation of any significant duration. She concluded that Levine had experienced no such episodes because Levine's testimony at the hearing contradicted the medical record. During the hearing the ALJ questioned Levine concerning notes in his medical records stating that he represented to doctors that he had been psychiatrically hospitalized. Levine responded that these notations had been a misunderstanding and that he had never been hospitalized. (Tr. 21.) Thus, the ALJ implicitly rejected Dr. Demuth's estimate that Levine would experience one or two episodes of decompensation of extended duration per year in light of Levine's testimony.

Finally, Levine notes without discussion in his initial brief that Dr. Demuth's assessment is not valid under Social Security Administration regulations as it was not properly signed, and therefore it should not have been considered by the ALJ. (Pl.'s Br. at 25 n.2, Docket Entry 8.) The applicable regulations provide:

> Signature requirements. All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions, explanations or comments provided with respect to the history, examination and evaluation of laboratory test results. The signature of the medical source on a report annotated "not proofed" or "dictated but not read" is not acceptable. A rubber stamp signature of a medical source or the medical source's signature entered by any other person is not acceptable.

20 C.F.R. §§ 404.1519n(e), 416.919n(e). In this case, Dr. Demuth's opinion was "signed" electronically with his name in a different font and italicized. (See, e.g., Tr. 343.) While the Commissioner does not address Levine's contention on this point, the court observes that the Commissioner's Procedural Operations Manual appears to permit approved electronic signatures by medical and psychological consultants on medical assessment forms and disability determination forms. See POM § DI 26510.089(A)(4), https://secure.ssa.gov/apps10/poms.nsf/lnx/0426510089

*PJG*

(last visited May 7, 2010).[2]  Accordingly, the court finds that Levine has failed to demonstrate that

Dr. Demuth's opinion does not comply with the regulation and the Commissioner's policy.

### 2.    Social Functioning

Levine further alleges that the ALJ's decision with regard to social functioning issues is

based on a selective reading of the evidence.  In support of this contention, Levine attempts to

undermine several of the ALJ's findings by pointing out specific contrary notes in the medical

records.  For example, Levine states that contrary to the ALJ's statement that the " 'record

consistently shows that he is able to work well with co-workers and supervisors[,]' . . . . one

examining psychologist found that Levine needed a job environment with very little interaction with

people and it was very likely that Levine was disabled in terms of having to work in a job that

required any kind of extended involvement with a number of people." (Pl.'s Br. at 23, Docket Entry

8.)  The examining psychologist Levine is referencing is Dr. Larry E. Hamme, who treated Levine

from December 2001 through February 2002, and his opinion is from July 2003.  (Tr. 230.)

The ALJ's summary of the medical evidence specifically included a summary of Dr.

Hamme's medical notes and opinion as well as summaries of medical notes and opinions from no

less than six other treating sources from 2000-2005.  (Tr. 16-18.)  The summaries of the other

medical evidence included indications that Levine "was doing well," "was returning to college to

complete a degree," "did not indicate problems getting along with fellow workers and supervisors."

---

[2] The court may take judicial notice of factual information located in postings on government websites.  See Williams v. Long, 585 F. Supp. 2d 679, 687-88 (D. Md. 2008) (noting that some courts have found postings on government websites as inherently authentic or self-authenticating); In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2008 WL 4185869 at * 2 (E.D. La. Sept. 8, 2008) (noting that courts may take judicial notice of governmental websites including other courts' records).

PJG

(Id.) Further, based on the ALJ's personal impression of Levine during the hearing, she observed that he was "very expressive, articulate, interactive, and socially appropriate." (Tr. 21.) Accordingly, while Levine may point to evidence to the contrary, the ALJ's findings on Levine's social functioning are comfortably within the bounds of the substantial evidence standard. Blalock, 483 F.2d at 775 (4th Cir. 1973) (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence); Craig, 76 F.3d at 589 (stating that on review the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

However, even if the ALJ erred in finding that Levine had mild difficulties in social functioning, this error was harmless. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted); see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases). Levine still would not meet the requirements for Listing 12.04, 12.06, or 12.08. Further, the vocational expert explicitly testified that if Levine were limited in the manner described by Dr. Hamme, Levine could perform his past relevant work. (Tr. 426.)

### 3. Concentration, Persistence, or Pace

Finally, Levine contends that the ALJ's determination that Levine had moderate limitations in maintaining concentration, persistence, or pace is contradicted by the ALJ's RFC finding that Levine is capable of performing skilled and multi-stepped tasks, but with a reduced stress tolerance.

The ALJ found that Levine had a moderate limitation in this area based on a finding that Levine "cannot consistently handle complicated tasks performed in fluid environments and on a demand basis." (Tr. 22.) Accordingly, the court finds that these findings are not contradictory and do not provide support for Levine's argument.

## B.      Residual Functional Capacity

Levine next contends that the ALJ's findings regarding Levine's RFC did not comply with SSR 96-8p. Specifically, Levine argues that the restrictions in Levine's RFC are ambiguous or vague and fail to discuss the impact of Levine's mental impairments. He further alleges that the ALJ failed to properly evaluate all the medical opinions in the record.

### 1.      SSR 96-8p

The ALJ found that Levine

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can carry out tasks in situations where duties are relatively static and changes can be explained. I also find that he can perform tasks which do not require complicated independent prioritization or more than daily planning, and he can carry out multi-step tasks, but with reduced stress tolerance.

(Tr. 22.) Levine alleges in a conclusory fashion that the RFC is vague and violates SSR 96-8p in that it is unclear was would constitute "multi-step tasks, but with reduced stress tolerance," "duties [that] are relatively static," and "complicated independent prioritization." (Id.; see also Pl.'s Br. at 27, Docket Entry 8.) Upon review of the ALJ's discussion with the vocational expert, there is no indication that the vocational expert had any concerns or questions concerning the hypothetical propounded by the ALJ on this subject and the vocational expert promptly identified jobs that would meet that criteria. (Tr. 425-26.) Accordingly, Levine has failed to demonstrate that the language used in the RFC section renders the ALJ's decision unsupported by substantial evidence.

*PJG*

Levine next argues that the RFC is conclusory and that the ALJ did not explain her RFC assessment in accordance with SSR 96-8p. However, a review of the ALJ's opinion reveals that the ALJ provided an overall detailed and comprehensive opinion. For example, the ALJ discussed Levine's medical and psychological records; cited objective findings which the ALJ believed indicated that Levine was not as physically or mentally limited as alleged; discussed Levine's testimony, including the reasons she found that it supported her decision, and found that his portrayal of himself was inaccurate; and discussed the specific reasons for rejecting the consultative examiner's opinion. (See Tr. 16-24.) To the extent that Levine alleges that ALJ failed to consider his evidence of tremors in reaching a determination of Levine's RFC, the court rejects this argument. The opinion contains a detailed evaluation of the tremors. Further, the ALJ found that Levine had suffered from tremors his entire life, but that this condition did not preclude him from attending school or performing various kinds of work and that there was no evidence that the condition had worsened. (Tr. 16-21.) Moreover, Levine as an example alleged that this condition could limit Levine from performing jobs with fine dexterity (Pl.'s Br. 29, Docket Entry 8.); however, none of the jobs indicated by the vocational expert would be affected by this limitation. Therefore, the court finds this argument does not render the RFC unsupported by substantial evidence. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (noting that "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations" ); Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ is not required to specifically refer to every piece of evidence in the decision); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments.") (internal citations omitted).

PJG

## 2. Dr. James N. Ruffing

Levine argues that the ALJ failed to properly consider Dr. Ruffing's opinion. It is uncontroverted that Dr. Ruffing's limitations were far more restrictive than those found by the ALJ and, if accepted, could alter the ALJ's decision. At the request of Levine' attorney, Dr. Ruffing performed a consultative psychological evaluation of Levine on September 10, 2008. However, the ALJ rejected this opinion, finding that it was "starkly contrasted by the remainder of the record." (Tr. 21.) Specifically, the ALJ noted that (1) Dr. Daniels's notes from 2002 indicate that most of Levine's depression seems to be work related; (2) Dr. Islam-Husain's 2003 notes indicate that Levine is doing well on medication; (3) Dr. Hamme found that Levine had no bar to being able to perform simple tasks; (4) Dr. Mitch found that Levine was doing quite well; (5) Dr. Szymanski saw Levine annually noted that Levine was doing well; (6) Harbor Behavioral Healthcare notes indicate that Levine was staying busy and feeling that he is doing pretty well; and (7) Mr. Davis found that Levine could get along with others and understand and follow directions. (Tr. 23.) Further, the ALJ observed that one of the medical notes indicated that Levine researched mental disorders on the internet, suggesting that he is knowledgeable about psychological testing that may have led to inaccurate findings by Dr. Ruffing. (Id.)

Levine points to portions of the record that would support Dr. Ruffing's opinion. However, as repeatedly stated in this Report, the ALJ provided a comprehensive summary of the medical evidence presented in this matter. She further provided a detailed discussion of the reasons for rejecting Dr. Ruffing's opinion and the reasons for discounting Levine's credibility. Accordingly, while Levine may disagree with the ALJ's opinion and may point to evidence to the contrary, the court again finds the ALJ's evaluation and rejection of Dr. Ruffing's opinion to be comfortably within the bounds of the substantial evidence standard. Blalock, 483 F.2d at 775 (4th Cir. 1973)

*PJG*

(stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence); <u>Craig</u>, 76 F.3d at 589 (stating that on review the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

## RECOMMENDATION

For the foregoing reasons, the court finds that Levine has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. <u>See</u> <u>Craig</u>, 76 F.3d at 589; <u>see</u> <u>also</u> 42 U.S.C. § 405(g); <u>Coffman</u>, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 7, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).